RANDOM/CAT 3

FILED
12/1/2023
THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT
JC

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | No. **23-CR-385** |
| v. | ) | |
| BAQAR HUSSAIN RAZV SYED | ) | Violation: Title 18, United States Code, Section 1347 |
| | ) | |

JUDGE KENNELLY
MAGISTRATE JUDGE MCSHAIN

The UNITED STATES DEPARTMENT OF JUSTICE, CRIMINAL DIVISION charges:

1. At times material to this Information:

**The Medicare Program**

a. The Medicare program ("Medicare") was a federal health care program providing benefits to persons who were 65 years of age or older or disabled. Medicare was administered by the Centers for Medicare and Medicaid Services ("CMS"), a federal agency under the United States Department of Health and Human Services ("HHS"). Individuals who received benefits under Medicare were referred to as Medicare "beneficiaries."

b. Medicare was a "health care benefit program," as defined by Title 18, United States Code, Section 24(b), and a "Federal health care program," as defined by Title 42, United States Code, Section 1320a-7b(f).

c. Physicians, clinics, laboratories, and other health care providers that provided services to Medicare beneficiaries were able to apply for and obtain a "provider number." A health care provider that received a Medicare provider number

1

was able to file claims with Medicare to obtain reimbursement for services provided to beneficiaries.

    d. To receive Medicare reimbursement, providers had to fill out an application and execute a written provider agreement, known as CMS Form 855. The application contained certifications that the provider agreed to abide by Medicare laws and regulations, and that the provider "[would] not knowingly present or cause to be presented a false or fraudulent claim for payment by Medicare, and [would] not submit claims with deliberate ignorance or reckless disregard of their truth or falsity." Medicare providers were given access to Medicare manuals and service bulletins describing procedures, rules, and regulations.

### Over-the-Counter COVID-19 Test Kits

    e. In or around April 2022, the federal government announced that Medicare beneficiaries could receive up to eight over-the-counter COVID-19 tests per calendar month from participating pharmacies and health care providers, for the duration of the COVID-19 public health emergency, at no cost to beneficiaries.

    f. In order to receive reimbursement from Medicare for the over-the-counter COVID-19 tests, providers were directed to bill Medicare using Healthcare Common Procedure Code System ("HCPCS") code K1034 for the over-the-counter COVID-19 tests.

### The Defendant and Related Companies

    g. Laboratory 1 was an Illinois company located in Schaumburg, Illinois. Laboratory 1 was enrolled as a provider with Medicare and purported to

provide over-the-counter COVID-19 test kits to Medicare beneficiaries. Laboratory 1 received reimbursements from Medicare into a JP Morgan Chase account ending in x6715.

  h. Management Company 1 was an Illinois company located in Skokie, Illinois. Management Company 1 had a Bank of America account ending in x8053 and a US Bank account ending in x1458.

  i. BAQAR HUSSAIN RAZV SYED, a resident of Skokie, Illinois, was the owner of Laboratory 1 and the manager of Management Company 1. SYED had a Bank of America account ending in x5669.

  j. S.P. was a Medicare beneficiary residing in the Northern District of Illinois.

  2. From in or around February 2023, and continuing through in or around July 2023, in Cook County, in the Northern District of Illinois, and elsewhere,

BAQAR HUSSAIN RAZV SYED,

defendant herein, together with others, participated in a scheme and artifice to defraud a health care benefit program, namely Medicare, and to obtain, by means of materially false and fraudulent pretenses, representations, and promises, money owned by, and under the custody and control of Medicare, in connection with the delivery of and payment for health care benefits, items, and services, which scheme is further described below.

3. It was part of the scheme that BAQAR HUSSAIN RAZV SYED and others unlawfully enriched themselves by: (a) submitting and causing the submission of false and fraudulent claims to Medicare for items and services that were not provided as represented; (b) concealing the submission of false and fraudulent claims and the receipt and transfer of the proceeds from the fraud; and (c) diverting proceeds of the fraud for their personal use and benefit.

4. It was further part of the scheme that BAQAR HUSSAIN RAZV SYED and others submitted and caused the submission of false and fraudulent claims to Medicare for over two million over-the-counter COVID-19 test kits purportedly provided by Laboratory 1 that were never distributed or sent to Medicare beneficiaries.

5. It was further part of the scheme that BAQAR HUSSAIN RAZV SYED and others submitted and caused the submission of false and fraudulent claims to Medicare for over-the-counter COVID-19 test kits purportedly provided by Laboratory 1 to Medicare beneficiaries who had died prior to the purported date of service for the claim.

6. It was further part of the scheme that BAQAR HUSSAIN RAZV SYED and others submitted and caused the submission of more than $31 million in false and fraudulent claims to Medicare, of which Medicare paid more than $14 million to Laboratory 1 for over-the-counter COVID-19 test kits that were ineligible for Medicare reimbursement because they were not provided as represented.

7. It was further part of the scheme that BAQAR HUSSAIN RAZV SYED and others misrepresented, concealed, and hid, and caused to be misrepresented, concealed and hidden, the acts done in furtherance of the scheme and the purposes of those acts.

8. It was further part of the scheme that, for the purpose of misrepresenting, concealing, and hiding the scheme, BAQAR HUSSAIN RAZV SYED and others transferred, paid out, and withdrew funds received from Medicare in the Laboratory 1 account ending in x6715 at JP Morgan Chase Bank, including by transferring funds to the Management Company 1 account ending in x8053 at Bank of America, the Management Company 1 account ending in x1458 at US Bank, and the SYED account ending in x5669 at Bank of America.

9. On or about April 13, 2023, in Cook County, in the Northern District of Illinois, and elsewhere,

BAQAR HUSSAIN RAZV SYED,

defendant herein, did knowingly and willfully execute and attempt to execute the above-described scheme by submitting and causing to be submitted a claim to Medicare for reimbursement of approximately $200 for over-the-counter COVID-19 tests purportedly provided to S.P., knowing that the over-the-counter COVID-19 test kits were not provided;

In violation of Title 18, United States Code, Section 1347.

**FORFEITURE ALLEGATION**

1. Upon conviction of an offense in violation of Title 18, United States Code, Section 1347, as set forth in this Information,

BAQAR HUSSAIN RAZV SYED,

defendant herein, shall forfeit to the United States any property, real or personal, that constitutes or is derived, directly or indirectly, from gross proceeds traceable to the commission of the offense, pursuant to Title 18, United States Code, Section 982(a)(7).

2. The property to be forfeited includes, but is not limited to:

    a. A personal money judgment in the amount of approximately $14.4 million; and

    b. The following specific property:

        i. Approximately $670,357.34 in funds seized on or about June 23, 2023, from JPMorgan Chase account number xxxxx6715;

        ii. Approximately $55,828.24 in funds seized on or about June 23, 2023, from Bank of America account number xxxxxxxx8053;

        iii. Approximately $2,828,492.97 in funds seized on or about June 23, 2023, from US Bank account number xxxxxxxx1458;

    iv.  Approximately $702,521.79 in funds seized on or about June 23, 2023, from Bank of America account number xxxxxxxx5669.

3. If any of the property described above, as a result of any act or omission of the defendant: cannot be located upon the exercise of due diligence; has been transferred or sold to, or deposited with, a third party; has been placed beyond the jurisdiction of the Court; has been substantially diminished in value; or has been commingled with other property that cannot be subdivided without difficulty; the United States of America shall be entitled to forfeiture of substitute property, as provided in Title 21, United States Code, Section 853(p).

     s/ Victor B. Yanz
for GLENN S. LEON
   U.S. DEPARTMENT OF JUSTICE
   CRIMINAL DIVISION, FRAUD SECTION
   CHIEF

     s/ Victor B. Yanz
for DUSTIN DAVIS
   U.S. DEPARTMENT OF JUSTICE
   CRIMINAL DIVISION, FRAUD SECTION
   CHIEF – HEALTH CARE FRAUD UNIT